ROSA GUNDERSON, as Administratrix of the Estate of PETER
    A. GUNDERSON, Deceased, Respondent, v. ROEBLING CON-
    STRUCTION COMPANY, Appellant, Impleaded with Another.

*Gunderson v. Roebling Construction Co.*, 124 App. Div. 914, reversed.
(Argued December 10, 1908; decided January 5, 1909.)

APPEAL from a judgment of the Appellate Division of the
Supreme Court in the second judicial department, entered

34

January 30, 1908, affirming a judgment in favor of plaintiff entered upon a verdict and an order denying a motion for a new trial.

*J. Arthur Hilton* and *Frank V. Johnson* for appellant.

*Thomas J. O'Neill* and *Joseph A. Corr* for respondent.

EDWARD T. BARTLETT, J. This action was brought to recover damages for the death of plaintiff's husband, who was killed on the 26th of September, 1906, while working on a structure, in the course of erection, known as the Edison Building, a power house, at Thirty-ninth street and First avenue, in the city of New York, borough of Manhattan.

This action was originally commenced against the Roebling Construction Company and Post & McCord, who were the contractors engaged in erecting the steel structure and the Roebling Construction Company contracted for the concrete work. When the plaintiff first rested a motion was made to dismiss the complaint as to both defendants. It was denied as to the Roebling Construction Company and granted as to Post & McCord.

The Roebling Construction Company maintained an electric elevator or hoist for the purpose of carrying its concrete and material from the basement to the upper floors. The hoist ran from the cellar to the top of the building between "guides," which kept it in position. There were also "grooved cleats" that ran upon the guides and connected with the hoist. The cement was carried in wheelbarrows, which were placed on the hoist and delivered at the various floors.

The scene and nature of the accident are necessarily described in a general way, for the reason that at the trial a model of the building was admitted in evidence, and to which reference was made as to locations, letters and figures that were quite clear, doubtless, to the witnesses and jury, but not as readily comprehended by an appellate court. There was submitted on the argument in this court a blue print containing letters and figures which differed somewhat from those used in the model.

The steel structure of this building was not completed at the time of the accident, and the general condition may be thus described: Steel upright columns extended from the ground to the roof of the building, and there was opposite each column an iron slanting girder running, as it appears by the blue print, from the third floor, at an angle of forty-five degrees, to near the top of each column. There were also three eye-beams running at right angles with the girders, apparently to bind and strengthen the same. The third floor was laid and on each side of it were four columns equipped with girders and eye-beams as stated. On the east side of the building, on which was operated the electric hoist, there were four columns marked A, B, C and D, and their respective girders were marked I, J, K and L. There were also three eye-beams running at right angles with the girders, marked respectively 1, 2 and 3. The electric hoist was placed between columns B and C.

On the day of the accident, near the top of column B, a workman had been discharged in the middle of the day, and the deceased was ordered to take his place. The point at which the deceased was directed to begin work was from thirty to forty feet above the third floor. At the time this order was given to the deceased, he was standing on the third floor with Lohman, the foreman, and a witness named Perine, all of whom were in the employ of Post & McCord, and had no connection with the Roebling Construction Company, or its concrete work.

It clearly appears that the deceased might have walked along the floor from the point where he was standing at the time the order to take the place of the man discharged was given and ascended girder "J," connected with column "B," and reached his destination without having approached the immediate vicinity where the electric hoist was operated. The deceased, instead of availing himself of the floor already laid, ascended girder "K," connected with column "C," and on arriving at the eye-beam "3," which ran within an inch and a half of the guide of the hoist, sought thereby to reach girder "J," connected with column "B." It was proved that a person standing on this eye-beam when the hoist was

descending could not lay hold of the guide in which it ran for support without danger of crushing his hand, and if not thus supported the wind from the hoist might knock him off as it descended at a high rate of speed.

An eye witness of the accident testified that he saw the deceased ascending the girder and start out upon the eye-beam. He thus describes the situation: " In order to walk on that beam he had to steady himself. As he balanced on the edge there he would have to balance himself and reach for something." It seems that this eye-beam did not present a flat surface on which to walk, but was at an angle of forty-five degrees like the girder in which it was inserted. This witness continued : " That portion of that eye-beam he was walking on was the edge of the angle. That edge was within five or six inches of the elevator, not the inside edge — the top edge he was walking on, fully five or six inches. One edge of the flange of this eye-beam was within an inch or so — two inches of this track or guide." This witness went on to state that about the time deceased was opposite the guide the hoist suddenly descended at great speed from the floor above and he was struck by the projecting arm of a wheelbarrow somewhere between his breast and knees, the blow causing him to pitch forward and plunge down into the hoist, receiving fatal injuries.

It thus appears that this unfortunate intestate selected a route that was not a safe one to reach his destination, but exceedingly dangerous. This eye-beam was some twenty feet above the third floor and presented a difficult footing for even a skilled ironworker, to say nothing of the dangerous proximity of the hoist. It was also proved that there were other safe routes which the deceased might have selected in addition to the one already pointed out. It was further proved that Lohman, the foreman, did not instruct the deceased to take any particular route to the point where he was to continue the work of the man discharged. It also appears that deceased was receiving the full wages of a skilled ironworker.

It was ably argued by plaintiff's counsel that the Roebling Construction Company should be held liable in damages by reason of the improper manner in which the wheelbarrows

were placed upon the hoist which resulted in the death of the intestate. We are, however, of the opinion that this question cannot be considered as the evidence clearly establishes that the intestate was guilty of contributory negligence and that the judgment must be reversed.

The judgment against the Roebling Construction Company is reversed and a new trial granted, with costs to abide the event.

CULLEN, Ch. J., GRAY, VANN, WERNER and WILLARD BARTLETT, JJ., concur; HISCOCK, J., dissents.

Judgment reversed, etc.