(156 App. Div. 16.)

## GUNDERSON v. ROEBLING CONST. CO.

(Supreme Court, Appellate Division, Second Department. March 28, 1913.)

1. APPEAL AND ERROR (§ 1213*)—NEW TRIAL—LAW OF THE CASE.

Where, in an action for the death of an iron worker knocked from an iron beam in an unfinished building by the projecting arm of a wheelbarrow carried on a hoist, the Court of Appeals held that he was negligent by selecting a dangerous route to a point to which he had been directed to go, where there were other and safe routes open to him, evidence on a new trial that one of the routes mentioned by the Court of Appeals was obstructed by piles of structural iron did not make his contributory negligence a question for the jury, where it still appeared from the evidence that there were other safe routes which were open and unobstructed.

[Ed. Note.—For other cases, see Appeal and Error, Cent. Dig. § 4714; Dec. Dig. § 1213.*]

2. MASTER AND SERVANT (§ 281*)—ACTIONS FOR INJURIES—SUFFICIENCY OF EVIDENCE.

In an action for the death of an iron worker, knocked from an iron beam in an unfinished building by the projecting arm of a wheelbarrow carried on a hoist, evidence *held* to show that there were routes to the point to which he had been directed to go, other than that selected by him, which were safer and just as short and direct.

[Ed. Note.—For other cases, see Master and Servant, Cent. Dig. §§ 987–996; Dec. Dig. § 281.*]

Appeal from Trial Term, Kings County.

Action by Rosa Gunderson, as administratrix of Peter A. Gunderson, deceased, against the Roebling Construction Company. From a judgment dismissing the complaint, and from an order denying a new trial, plaintiff appeals. Affirmed.

Argued before JENKS, P. J., and BURR, THOMAS, CARR, and STAPLETON, JJ.

Thomas J. O'Neill, of New York City (L. F. Fish, of New York City, on the brief), for appellant.

J. Arthur Hilton, of New York City, for respondent.

JENKS, P. J. The Court of Appeals reversed plaintiff's judgment and granted a new trial. Gunderson v. Roebling Construction Co., 194 N. Y. 529, 86 N. E. 807. At that trial plaintiff was dismissed at the close of her case, and appeals from the consequent judgment.

[1, 2] I think that her contention that the proof adduced on that trial relieved the plaintiff from the said precedent is not right. The Court of Appeals said that the evidence "clearly establishes" contributory negligence. The question before us is whether this record relieves the plaintiff from such imputation. It is unnecessary to detail the particulars of the casualty, for reference to 194 N. Y. 529, 86 N. E. 807, will afford full information. Suffice it to say that the plaintiff's intestate, an iron worker, was directed to go from one place in an unfinished building to another place therein to do certain work, and while on his way was struck and thrown down a hoistway by the projecting arm of a wheelbarrow that was carried on the descending hoist. The Court of Appeals concluded that the route selected by the work-

*For other cases see same topic & § NUMBER in Dec. & Am. Digs. 1907 to date, & Rep'r Indexes

man was not safe, but exceedingly dangerous, that it appeared that there were other and safe routes open to him, and that the workman, who was receiving the wages of a skilled iron worker, was not instructed by the foreman to take any particular route. There is a blueprint which will be referred to:

The intestate received his order at the point marked $X$ to go to work at the point marked $P$. The route taken is indicated by the broken line from $X$ to girder $K$, up $K$ to the I-beam *3*. The point of casualty is marked $Q$ on that I-beam. The witnesses called as to the casualty were the same as before. But the counsel for the appellant marks the differences in the past and present record as follows:

He says that it appeared on the former trial, from the defendant's evidence, that the deceased had an open, clear, unobstructed, and completed floor to go to column B, and to ascend the girder J, doubtless meaning to go to girder J and ascend it to column B (an alleged safe route open, but not taken); whereas on this trial it appears by the testimony of intestate's foreman that much of the floor was not laid, and in nearly all parts of the floor were large piles of structural iron, and that the jury would have been authorized to find that these piles blocked the pathway of the deceased if he had attempted to ascend the other girder, while the decision of the Court of Appeals proceeded on the theory that the proof affirmatively showed that the route via girder J was entirely open and unobstructed.

This is not an accurate statement of the conclusion of the Court of Appeals, which was that there were "other safe routes," and not a route or routes "entirely open and unobstructed." But even if the floor were obstructed and left with open spaces, so as to afford no thoroughfare, yet the proof shows that there were other routes which were safe and direct, which did not even in part lie along the floor. The intestate could have gone up girder L to column D, passed over I-beam 21 to column C, along I-beam 10 to column B, across I-beam 16 to column A, and up column A. Or he could have continued the course he did take up girder K, and, instead of going along I-beam 3, he could have kept his way up column K to column C, and then have passed along I-beam 10 to column B, thence along I-beam 16 to column A. Or, instead of ascending column K, he could have crossed from the foot of K on I-beam No. 18–1 to girder J, and thence have ascended girder J to column B, thence across I-beam No. 16 to column A. Or, instead of ascending girder J, he could have crossed from the foot of J along I-beam No. 17–1 to girder I, and then have ascended the girder I up to column A. Each of these routes was practically the same in distance from the starting point of the intestate, free from the danger which the intestate encountered, and I-beams 21, 10, 16, 18–1 and 17, had flat flanges; whereas I-beam 3, which lay in the route actually selected, presented an edge, as it was placed at an angle of 45 degrees, so as to be flat and flush with the girders J and K, respectively.

It must be borne in mind that any temporary obstruction of the floor by piles of iron or of other substances would not interfere with any of the routes heretofore suggested. The plaintiff's witness Leaman testifies referring to the floor:

"When it was open, and not filled in with concrete, or not covered with boards, we walked from the north to the south on the I-beams, and from east to west on the girders; and at the time of this accident those floor girders were all in to the east of the columns, and the I-beams were in to the east of the columns."

There is no contradiction, and the casualty occurred on the east side of the columns. Moreover, the same witness testifies that the intestate could have gone further to the north and have ascended up any one of the other slanting girders leading to the columns.

Before the plaintiff can rely upon the fact that the route selected was the sole one afforded to her intestate, so as to argue that he was

not guilty of contributory negligence in taking that route, she must point out the proof that would have justified such a finding.

While it is true that all of the floor was not completed, and that here and there iron was piled up upon the floor, yet there is no proof from which the jury could have inferred that any part of a route from the point of departure to the place of work which comprised the use of the floor was so obstructed as to make its use impracticable. The jury could not speculate or conjecture that there was such a physical condition. Moreover, the plaintiff's witness Halsted testifies as follows:

"Q. And taking a position near this stack, or at least the position where Gunderson was when he started to go to this work, was there anything that obstructed or prevented his walking in a direct line from where he walked there up to or over to the foot of the girder *I*? * * * A. Not that I remember; no, sir. Q. Was there anything that obstructed the way, so as to prevent him walking directly from where you saw him at the time he was sent up to go up, and the point at the foot of girder *J*? * * * A. I don't know whether he got there directly, but he could have got there; he could have walked anywhere around and got up them girders—any one of them. * * * Q. When you say he could walk to and get up any one of those girders, are you referring to *I, J, K*, and *L*? A. Yes, sir; all of them hopper girders."

The "additional new evidence" is that a large beam of structural iron had been hoisted and must either be made fast before noon or else be lowered again, that there remained only a few minutes before noon to make it fast, and that the foreman testified that he expected the deceased to go the quickest way, which was the route selected by the intestate. This is said to bear on the question whether the intestate pursued a "reasonable route." But I do not find that the beam would have to be lowered again if the work was not done forthwith. The sole witness, Leaman, testifies that he was anxious to have the work done before the noon hour, and says:

"We wouldn't send a piece of iron up and then lower it again; it would have to stay there until another time."

And the same witness says:

"As to whether it is a shorter distance, for instance, to go up this girder, and then walk along the top structure over to where he was working, or whether it would be handier to stay right on the floor and walk right along to the foot of these girders, or near to the north, till he got to the girder he was to go up, and then climb up there, that would be according to the condition of the floor. Of course, you could go any one way. There was no difference as to the actual distance Gunderson had to travel, whichever of these ways he went."

And speaking of the routes I have described, the plaintiff's witness Halsted testifies:

"There was no difference in the actual distance traveled between either one of those routes, and taking the other routes, for instance, going up to *L* and these other routes, and going through these I-beams in the structure, there was no difference in those routes. The distances are all the same; yes, sir."

And further:

"Q. And in walking around the iron, could you give us any idea as to the feet? In taking this route between these two lines of columns, running north, would it be any longer in taking that route, where he had to go around the piles of iron, than with any other route? (Same objection; allowed; excep-

tion taken.)　A. Well, that all depended on how quick the man was.　It wouldn't be any further around; no."

I think that the judgment and order must be affirmed, with costs. All concur.